UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BRIAN VAUGHN, GEOFF BENNETT, TAMMY
BACMEISTER, AND JERRY BACMEISTER, ,

        Plaintiffs,

v.                                                      Case No.  5:05-cv-311-Oc-10GRJ

OAK STREET MORTGAGE, LLC,,

        Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

Pending before the Court is Plaintiffs' Motion For Conditional Class Certification, Judicial Notice And Production Of List (Doc. 47) and supporting memorandum. (Doc. 48.)  Defendant filed a response in opposition.  (Doc. 78.) For the following reasons, it is recommended that Plaintiffs' motion be **DENIED**.

## I. INTRODUCTION

Plaintiffs, all of whom worked as loan officers for Oak Street Mortgage LLC ("Oak Street) in the Jacksonville, Florida branch office, filed a complaint under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§207 and 216(b), to recover unpaid overtime compensation allegedly owed to Plaintiffs and all similarly situated persons who are and/or were employed by Oak Street as loan officers. (hereinafter the "Vaughn

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

Case".)[2]  Approximately eighty (80) loan officers have filed Consents to Join this collective action (hereinafter "opt-in Plaintiffs").[3]

This case is closely related to a companion case styled *Epps, et al., v. Oak Street Mortgage, LLC*, *Case No. 5:04-cv-46-Oc-10GRJ* (the "Epps Case").   The two cases contain virtually identical claims; the only difference is that the plaintiffs in *Epps* were employed in the Ocala, Florida; St. Peterburg, Florida; and Atlanta, Georgia branch offices, while the plaintiffs in this case were employed in the Jacksonville, Florida branch office.

Epps was filed in the Ocala Division on February 2, 2004.[4]  On April 9, 2004, the Epps Plaintiffs filed a motion to facilitate notice, seeking to conditionally certify a class of loan officers, who worked at all thirty of Oak Street's offices after February 2, 2001.[5]  On July 12, 2004, the Court granted conditional certification but limited the class to loan officers employed in Greenville, South Carolina; Atlanta, Georgia; St. Petersburg, Florida; and Ocala, Florida.[6]  Pursuant to authorization from the Court, the parties then engaged in extensive collective action discovery.  The Plaintiffs and opt-in Plaintiffs propounded eleven sets of interrogatories, twenty-one requests for production, one set

---

[2] See Doc. 1 (Plaintiffs' Complaint), ¶3.

[3] Section 216(b) class actions differ from Rule 23, Fed.R.Civ.P. class actions in that, under §216(b), a person who wishes to join the collective action must affirmatively "opt-in" by filing written consent with the court.  Under Rule 23, a person must affirmatively "opt-out" if he or she wishes to abstain from the lawsuit. See 29 U.S.C. §216(b); see also Hipp v. Liberty National Life Insur. Co., 252 F.3d 1208, 1216 (11th Cir. 2001).

[4] See Doc. 1 in *Epps*.

[5] See Doc. 24 in *Epps*.

[6] See Docs. 55 & 68 in *Epps.*

of requests for admissions and took seven depositions, including a deposition of a corporate representative.[7]  Oak Street propounded eight sets of interrogatories and seventeen requests for production and deposed ten Plaintiffs and opt-in Plaintiffs.[8] Based on the collective action discovery, Oak Street filed a Motion for Decertification in the Epps Case. (Doc. 103 in *Epps*).

On January 31, 2005, unbeknownst to this Court, the Vaughn Plaintiffs who were represented by the same counsel as the Epps Plaintiffs, filed their virtually identical action in the Jacksonville Division.[9]  Three of the Vaughn Plaintiffs -- Brian Vaughn, Geoff Bennett and Tammy Bacmeister -- originally filed Consents to Join in the Epps Case and did not withdraw their Consents to Join on February 1, 2005.  On June 30, 2005, the instant action was transferred to the Ocala Division.[10]

On July 20, 2005, the Court conducted a hearing in Vaughn, during which the Court discussed the relationship with the Epps case, including Oak Street's pending motion to decertify in Epps.[11]  At the hearing, Plaintiffs' counsel suggested that they intended to request nationwide certification in Vaughn.  Because of the similarity of Vaughn and Epps, in order to promote judicial economy and efficiency in addressing the issue of class certification, and in order to provide Plaintiffs' counsel with a full and fair

---

[7] See Doc. 103 at ¶6 in *Epps*; Doc. 125 at ¶3 in *Epps*.

[8] See id.

[9] See Doc. 98 in *Epps*. These three plaintiffs filed their consents to join on September 15, 2004. See Doc. 85 in *Epps*.

[10] See Doc. 25.

[11] See Doc. 40.

3

opportunity to present its arguments in opposition to Oak Street's request for decertification in Epps and in support of Plaintiffs' arguments for nationwide certification, the Court granted Plaintiffs the right to file supplemental briefing, with supporting evidence, in Epps so that the Court could fully address the issue of whether to decertify the limited class in that case, permit the class to remain as conditionally certified or grant nationwide certification.[12] Plaintiffs accepted the Court's invitation and filed a supplemental memorandum in Epps and attached sworn affidavits from forty-nine Vaughn plaintiffs and opt-ins plaintiffs.[13]

On August 18, 2005, the Vaughn Plaintiffs filed the instant motion for conditional class certification. (Doc. 47.) The Court stayed the time for Oak Street to respond until after the Court ruled on the motion for decertification in Epps. (Doc. 53.) On November 14, 2005, the undersigned entered a Report and Recommendation in Epps recommending that Oak Street's motion to decertify be granted with regard to the claims of any plaintiffs or opt-in plaintiffs who were classified as non-exempt, but that the claims of plaintiffs and opt-in plaintiffs who were classified as exempt could continue collectively.[14] The undersigned also recommended that to the extent Plaintiffs had requested nationwide certification, that request should be denied.[15]

---

[12] See Doc. 132 in *Epps*.

[13] See Doc. 133 in *Epps*.

[14] See Doc. 135 in *Epps*.

[15] See id.

The Court then directed Oak Street to file its response to Plaintiffs' motion for conditional certification in Vaughn (Doc. 62), which Defendant has now done. (Doc. 78.) Accordingly, Plaintiff's motion for conditional certification is ripe for review.

## II. DISCUSSION

### Collateral Estoppel

As a threshold matter, Defendant argues that Plaintiffs' request for nationwide certification is barred by collateral estoppel because the Court already addressed certification in the virtually identical Epps Case. Conversely, Plaintiffs argue that the Court's ruling in the Epps Case has no collateral estoppel effect on the Vaughn Case.[16]

Collateral estoppel (or claim preclusion) precludes the relitigation of an issue that has already been litigated and resolved in a prior proceeding.[17] To claim the benefit of collateral estoppel a party must show that: (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been "a critical and necessary part" of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.[18]

Although several of the required elements are present, collateral estoppel is not appropriate in this instance because the undersigned's Report and Recommendation

---

[16] Although Plaintiffs did not address collateral estoppel in the pleadings filed in Vaughn, they addressed collateral estoppel in their supplemental memorandum filed in Epps. See Doc. 133 in *Epps*.

[17] See Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1359 (11th Cir. 1998.)

[18] See id.

has not yet been addressed by the District Judge. However, even assuming that the District Judge adopts the Report and Recommendation, the Court's ruling on decertification in Epps would lack sufficient finality to have a preclusive effect because the Epps action is still pending; thus, there is no final judgment.[19]

However, while collateral estoppel is not appropriate, the principles of *stare decisis* and law-of-the-case guide the Court's determination in this case.[20] The Complaints in Vaughn and Epps are virtually identical. Indeed, the only difference is that the plaintiffs in Epps were employed in the Ocala, Florida; St. Peterburg, Florida; and Atlanta, Georgia branch offices, while the plaintiffs in Vaughn were employed in the Jacksonville, Florida branch office. The Plaintiffs in both cases allege that Oak Street had a policy and practice of consistently encouraging and requiring their employee loan officers to work in excess of forty hours a week without paying them overtime compensation as required by the FLSA.[21]

Moreover, it appears as though the Vaughn Case was filed in an effort to avoid the Court's rulings in the Epps Case. The Vaughn Plaintiffs (three of whom originally filed Consents to Join in Epps) filed their virtually identical action in the Jacksonville Division after the Court declined to grant nationwide conditional certification, and limited conditional certification to four branch offices. Additionally, although the same lawyers

---

[19] See e.g., J.R. Clearwater Inc. v. Ashland Chemical Co., 93 F.3d 176,179 (5th Cir. 1996); Polk v. Montgomery County, Maryland, 782 F.2d 1196, 1201 (4th Cir. 1986.)

[20] See 21 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §4455, page 457 n. 13 (2d ed. 2002)(noting that "[p]erhaps it would be better to adhere to law-of-the-case concepts within the contours of an individual suit, and to rely on stare decisis as between different suits.")

[21] See Doc. 1, ¶3; Doc. 1, ¶3 in *Epps*.

represented the Plaintiffs in both cases, they failed to advise the Court of the pending Epps Case. Accordingly, based on principles of stare decisis and law-of-the-case, the Court's rulings in Epps are equally applicable in Vaughn.

### **Certification Analysis**

To maintain a collective action, Plaintiffs must demonstrate that they are "similarly situated" to the opt-in Plaintiffs with respect to their job requirements and with regard to their pay provisions.[22] Plaintiffs "need show only that their positions are similar, not identical, to the positions held by the putative class members."[23]

The Eleventh Circuit has recommended a two-staged approach.[24] At the first stage (typically in response to a motion to conditionally certify made prior to discovery), the court utilizes a "fairly lenient" standard in light of the limited evidence then available.[25] The second stage usually occurs at the end of discovery upon the defendant's motion for decertification of the class.[26] At this second stage, the Court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.[27]

---

[22] See Dybach v. State of Fla. Dept. of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

[23] Hipp v. Liberty National Life Insur. Co., 252 F.3d 1208, 1217 (11th Cir. 2001)(quoting Grayson v. K-Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996).

[24] See Hipp, 252 F.3d at 1218-19.

[25] See Cameron-Grant v. Maxim Healthcare Services, Inc., 347 F.3d 1240, 1243 n.1 (11th Cir. 2003); Hipp, 252 F.3d at 1217-18.

[26] See Hipp, 252 F.3d at 1218.

[27] See id.

A number of Courts have skipped the first stage altogether, and evaluated the evidence using the more stringent second prong where discovery has taken place and the Court has factual information on which to base its decision.[28] Here, while the parties have not engaged in discovery in Vaughn they have had the benefit of the eight months of collective action discovery taken in the identical case of Epps. During the course of the eight month collective action discovery in Epps, the Plaintiffs and opt-in Plaintiffs propounded eleven sets of interrogatories, twenty-one requests for production, one set of requests for admissions and took seven depositions -- including depositions of the Jacksonville site manager, Nick Garman; the current Executive Director, Glenn Brunker; the former Human Resources Director, Jean Beaver; and the former Southeast/Dietz Regional Manager, Mike Dietz.[29] Oak Street propounded eight sets of interrogatories and seventeen requests for production and deposed ten Plaintiffs and opt-in Plaintiffs.[30] Indeed, Plaintiffs attached to the instant motion many of the same documents used by the Epps' Plaintiffs to oppose Oak Street's motion for decertification.[31] Additionally, at the hearing on July 20, 2005, the Court advised the

---

[28] See e.g., Tyler v. Payless Shoe Source, Inc., 2005 WL 3133763, at *6 (M.D. Ala. Nov. 23, 2005); Holt v. Rite Aid Corp., 333 F.Supp.2d 1265, 1274 (M.D. Ala. 2004); Basco v, Wal-Mart Stores, Inc., 2004 WL 1497709, *4 (E.D. La. July 2, 2004); White v. Osmose, Inc., 204 F.Supp.2d 1309, 1313 at n.2 (M.D. Ala. 2002); see also, Hipp, 252 F.3d at 1219 (noting that "[n]othing in our circuit precedent, however, requires district courts to utilize this [two-staged] approach. The decision to create an opt-in class under §216(b), like the decision on class certification under Rule 23, remains soundly within the discretion of the district court.")

[29] See Doc. 103 at ¶6 in *Epps*; Doc. 125 at ¶3 in *Epps*.

[30] See id.

[31] The following documents are attached to Plaintiffs' motion: (1) Loan Officer Job Description; (2) Email from Mike Dietz regarding loan officer description; (3) Affidavit of Sean McClellan; (4) Email from Jean Beaver regarding timesheets; (5) Email from Jody Phillips to Jean Beaver in which Jody Phillips stated "I now understand that I am being forced to resign or take a demotion because of my awareness of

(continued…)

parties that it intended to analyze Plaintiffs' motion at the second stage.[32]  Accordingly, because the parties have engaged in substantial discovery and the Court has evidence to make "a factual determination on the similarly situated question," it is appropriate for the Court to consider Plaintiffs' motion at the second stage.[33]

In evaluating Plaintiffs' motion the Court has considered all of the evidence submitted both in Epps and Vaughn.[34]  However, Plaintiffs have submitted only one document that the Court did not consider in Epps.   Accordingly, the Court's evaluation of the evidence in Epps is equally applicable here and without repeating the analysis of this evidence the same reasoning is incorporated into this Report and Recommendation.

---

[31](…continued)
Oakstreet's illegal practice of documenting only 40 hours weekly although loan officers worked over 40 hours per week and were not compensated for the overtime pay."; (6) Email from Mike Dietz regarding disciplinary actions in the Atlanta office; (7) Email from Joe Gregoire regarding production requirements and working on saturday; (8) Email from Julie Dietz regarding minimum work hour requirements; (9) Email from Mike Dietz regarding production in Atlanta office; (10) Emails between Mike Dietz and Joe Gregoire regarding production in Ocala and working on saturdays; (11) Email from Mike Dietz regarding upcoming Super Saturday; (12) Email from Brian Dorn regarding production requirements; (13) email from Glenn Brunker to Mike Dietz regarding production at the offices in the Dietz region; and (14) the same forty-nine (49) affidavits attached to Plaintiffs' Supplemental Memorandum (Doc. 133) in Epps.

[32] See Doc. 40, pages 72-83.

[33] Moreover, Plaintiffs' counsel sent letters to approximately 400 loan officers (Doc. 40, page 48) and approximately eighty potential plaintiffs have already opted into the lawsuit.  See Morisky v. Public Service Electric and Gas Company, 111 F.Supp.2d 493, 497-98 (D.N.J. 2000)(jumping to second step where *inter alia* more than 100 potential plaintiffs had already opted into the lawsuit).

[34] Defendant requested that the Court take judicial notice of the pleadings and evidence filed in Epps. Although it was not necessary for Defendant to file a motion, Defendant's Unopposed Motion To Take Judicial Notice (Doc. 76) is **GRANTED**.

From August 2, 2002 to present, Oak Street had two different overtime policies.[35] Until January 2003, Oak Street classified its loan officers as exempt, and consequently, they were not paid for any overtime they worked.[36] During this period, loan officers were not required to keep time sheets.[37] The loan officers who were classified as exempt, contend that they were required to work more than forty hours per week and that they were not paid overtime compensation. In January 2003, Oak Street reclassified its loan officers as non-exempt and the loan officers were then entitled to overtime compensation consistent with the FLSA.[38] While classified as non-exempt, loan officers were expected to work a 40-hour work week only, and to meet their production goals within that 40-hour week.[39] Loan officers were required to seek pre-approval from their site manager before they worked overtime.[40] Loan officers submitted their timesheets to their site or sales manager, who in turn submitted them to Human Resources.[41] The non-exempt loan officers contend they were required to work

---

[35] In its motion, Plaintiffs request that Oak Street be required to produce a list of all loan officers who were employed from August 1, 2002 to present. See Doc. 48 at 13. However, Oak Street classified its loan officers as exempt from as early as February 1, 2002. See Doc. 103, Exhibit C in *Epps* (Defendant's Response to Lyndon Hart's First Set Of Interrogatories), Answer to Interrogatory #5.

[36] See Doc. 103, Exhibit C (Defendant's Response to Lyndon Hart's First Set Of Interrogatories), Answer to Interrogatory #5 in *Epps*.

[37] See id.

[38] See id.

[39] See id.

[40] See id. Despite the written policy, loan officers in the Greenville, South Carolina office apparently were not required to obtain pre-approval. See Deposition of Kelton Graham, pages 49, 125-26.

[41] See Doc. 103, Exhibit C (Defendant's Response to Lyndon Hart's First Set Of Interrogatories), Response to Interrogatory #5.

more than 40 hours per week but that they were forced to record only 40 hours on their weekly timesheets.

In Epps, the Court found that the Plaintiffs and opt-in Plaintiffs who were classified as exempt were similarly situated because they shared the same job title, job description, job functions, similar production requirements, were subject to the same evaluation process and were paid according to similar compensation plans. (Doc. 135.) Additionally, while office hours varied by branch and loan officer, the Plaintiffs and opt-in Plaintiffs were uniformly required to work evenings and weekends. Thus, the Court concluded that the claims of the one Plaintiff and the claims of the opt-in Plaintiffs who were classified as exempt were similarly situated with respect to job requirements and pay provisions and that the basis of their claims was sufficiently similar for their claims to proceed collectively.

However, the Court found that the non-exempt loan officers were not similarly situated because the resolution of their claims would involve an individualized level of inquiry that was not necessary for the exempt loan officers.  For example, the Court would have to consider whether a particular plaintiff requested permission from the site manager to work overtime and/or was directed by the site manger to work overtime and, if so, whether a plaintiff was instructed to record or not to record overtime on their time sheets.  Even if Oak Street had a corporate policy of discouraging overtime, each Plaintiff and opt-in Plaintiff's proof of a violation would be individualized because it would depend upon how or whether each individual site manager implemented the policy with regard to each individual plaintiff.

The only additional evidence submitted in this case (and not considered by the Court in Epps) was an email from Brian Dorn, the site manager in Orlando, Florida, to loan officers regarding production in November 2004.[42] In the email, Mr. Dorn notes that his employees are working "every" Saturday and that the loan officers need to get two quality submits per week. This email is consistent with the other evidence in the case -- i.e., that loan officers had a weekly production goal of ten proposals and two submissions (known as "10/2") and that they were required to work on Saturdays if they failed to meet their weekly production goals.[43] As such, this email (which was sent at a time when loan officers were classified as non-exempt) does not change the Court's conclusion that the non-exempt loan officers are not similarly situated.

Applying principles of *stare decisis* and law-of-the-case, the Court finds that its recommendation in Epps is equally applicable in Vaughn. That is, the claims of the Plaintiffs and opt-in Plaintiffs who were classified as exempt are similarly situated; while the claims of the Plaintiffs and opt-in Plaintiffs who were classified as non-exempt are not similarly situated. However, in this case, none of the four named Plaintiffs worked for Oak Street prior to January 2003 and, thus, they were never classified as exempt.[44] As discussed above, loan officers who were classified as exempt are not similarly situated with those who were classified as non-exempt. Accordingly, the named

---

[42] See Doc. 47, Exhibit M.

[43] See Doc. 135, pages 8, 12 in *Epps*.

[44] See Doc. 134, Exhibit 20 (Exhibit C to Declaration of Dena Brawner) in *Epps*; Doc. 47, Exhibit D (Affidavits of Plaintiffs and opt-in Plaintiffs).

12

Plaintiffs (who were only classified as non-exempt), are not similarly situated with the opt-in Plaintiffs who were classified as exempt.

Because the Plaintiffs have failed to show that they are similarly situated with the opt-in Plaintiffs, this action should not proceed collectively. The four named Plaintiffs should be permitted to proceed individually with regard to their claims, while the opt-in Plaintiffs should be dismissed without prejudice to the right of each opt-in Plaintiff to file a suit on his or her own behalf. To avoid prejudice to the opt-in Plaintiffs, the District Court should withhold entry of final judgment so that each individual plaintiff who wishes to proceed with an individual claim can file suit in this district, or within another appropriate District, within thirty days of the District Court's Order. For those opt-in Plaintiffs who file suit in this District, the Court can then transfer any individual cases to the appropriate District Court pursuant to 28 U.S.C. §1406 and §1631.

### III. RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that:

(1) Plaintiffs' Motion For Conditional Class Certification, Judicial Notice And Production Of List (Doc. 47) be **DENIED**;

(2) The District Court should dismiss without prejudice the claims of the opt-in Plaintiffs;

(3) The District Court should withhold entry of final judgment so that each individual plaintiff who wishes to proceed with an individual claim can file a suit in this district or the appropriate district. The Court should then transfer any individual cases

re-filed in this District to the appropriate District Court pursuant to 28 U.S.C. §1406 and §1631.

  **IN CHAMBERS** in Ocala, Florida, on March 24, 2006.

                             GARY R. JONES
                             United States Magistrate Judge

Copies to:
  The Honorable Wm. Terrell Hodges
  Senior United States District Judge

  Counsel of Record